| | |
|---|---|
| CHAD BLACKARD | CIVIL ACTION 12-704 |
| VERSUS | |
| LIVINGSTON PARISH SEWER DISTRICT | STATE OF LOUISIANA |

_____

### MEMORANDUM IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Plaintiff was employed by Defendant for approximately 5 ½ years, until his termination of employment in July of 2012. Plaintiff has asserted disability discrimination, denial of accommodation and retaliation claims under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act in connection with the termination of Plaintiff and denial of an accommodation as well as the failure to engage in an interactive process to establish possible reasonable accommodations.

In addressing Plaintiff's claims in its brief, Defendant denies violating the ADA while not even discussing the possibility of accommodations with a disabled employee before terminating him. Defendant also does not in its brief address its obligation to engage in an interactive process with disabled employees concerning accommodations. Defendant argues that plaintiff was not disabled even while it is clearly recognized, both before and even after terminating him, that he

1

was disabled under the ADA. An employee does not need to be labeled as "disabled" in order to be protected under the ADA or Rehabilitation Act.

## LAW AND ARGUMENT

**The Standard of Review**

F.R.C.P. Rule 56(c) provides, in pertinent part:

Motions and Proceedings Thereon . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The dismissal of a claim on summary judgment is proper only if it appears that Plaintiff can prove no set of facts in support of the claims which would entitle her to relief. *O'Hare v. Global Natural Resources, Inc.*, 898 F.2d 1015 (5th Cir. 1990); *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied,* 459 U.S. 1105 (1983). Defendant must carry its burden as the moving party to demonstrate that there is no genuine dispute as to any material fact as to Plaintiff's claims. The deciding court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. *Grillet v. Sears, Roebuck & Co.*, 927 F.2d 217, 220 (5th Cir. 1991). A motion for summary judgment is not substitute for credibility determinations to be made at trial on the merits. As will be more fully shown herein, defendant's motion should be denied. Plaintiff can bring forth significantly probative evidence in support of his allegations, and a dispute exists as to all material facts alleged by the defendant.

**Plaintiff Was Disabled and Was A Qualified Person with A Disability**

1. Plaintiff was Disabled

In order to prove that he is disabled for the purposes of the ADA and also a qualified person with a disability so as to be able to make claims under the ADA, for discrimination, denial of accommodations and retaliation, a plaintiff must establish that he has a physical or mental impairment substantially limiting a major life activity but could, with reasonable accommodations, perform the essential duties of the position from which he was terminated. 42 U.S.C. §§ 12102(2), 12111(8), 12112.

Under 42 U.S.C. § 12102(2), disability means: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

Defendant, in addressing the issue of disability based on the definition of a disability in the ADA does not debate the issue that Plaintiff suffers one or more mental impairments. Defendant disputes, instead, only that Plaintiff's impairments do not substantially limit major life activities for purposes of establishing actual disability and also contends he cannot argue that he is disabled based on a record of such an impairment or being regarded as having such an impairment.

For reasons stated below, each of these arguments must properly be rejected, and Plaintiff's summary judgment evidence satisfies his burden to establish his disability within the meaning of §12102(2).

3

a. Actual Disability

Defendant acknowledges Plaintiff's mental impairments and describes them as "possibly having a trigger mechanism that made his conditions episodic and intermittent" without any citing source to define such impairments as episodic. Mental impairments are illnesses just as any type of physical illness and have to be treated as such.

The issue of Plaintiff's actual disability, is, in all events, whether the restrictions noted individually or collectively substantially limit one or more of the major life activities of Plaintiff. Defendant, falsely suggests that Plaintiff is not a qualified individual with a disability because his mental conditions do not limit a major life activity. However, sleeping, concentrating, taking care of one's self, and social functioning are major life activities as noted by Plaintiff's treating nurse practitioner in her deposition.
(Exhibit A, Smith's Depo. pp. 38-39).

Q. Would you consider sleeping, concentrating, taking care of one's self, social functioning, major life activities?

A. Definetely, and I think the sleeping does affect the mood or the anxiety, your mood or anxiety.

Q. Right. And according to your records, Mr. Blackard was complaining about his inablity to sleep?

A. Correct, which does lead to grumpiness or irritability or being quick-tempered.

Moreover, every circuit that has addressed the issue and has concluded that sleeping is a major life activity. See, e.g., *Desmond v. Mukasey*, 530 F.3d 944, 953 (D.C.Cir.2008); *Nadler v. Harvey*, No. 06-12692, 2007 WL 2404705, at *5 (11th Cir. Aug. 24, 2007) (unpublished); *Burks*

*v. Wis. Dep't of Transp.*, 464 F.3d 744, 755 (7th Cir.2006); *Boerst v. Gen. Mills Operations, Inc.*, 25 Fed.Appx. 403 (6th Cir.2002) (unpublished); *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352-53 (4th Cir.2001); *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.1999); *McAlindin v. County of San Diego*, 192 F.3d 1226, 1234 (9th Cir.1999); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir.1998). In *Desmond*, the court performed a thorough analysis of why sleep is a major life activity, relying on scientific evidence that the average person spends about one-third of her life asleep and that sleep plays an important role in brain development, memory reinforcement, and immune function. *Desmond*, 530 F.3d at 953.

Early work hours and the mandatory requirement to be on a rotation to be on call at night-- (although it may have been one that Plaintiff's medical providers could have requested to adjust if Defendant had engaged in the required interactive process of considering accommodations to Plaintiff's disability (see Section III (A(2)(a)(2)) - would knock Plaintiff out of any jobs having a potentially irregular schedule or significant overtime. This effect of an impairment to broadly preclude certain categories of employment for a disabled individual is in fact the standard adopted under the ADA to determine whether an impairment substantially limits an individual's ability to perform the major life activity of work. ( Citing 29 C.F.R. 1630.2(j)(3)), stating that being significantly limited in the major life activity of work must include that individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes.")

The regulation, at 29 CFR §1630.2(j)(1), states:
"Substantially limited" means: (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner

or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Under that definition, a limitation on duration of hours of work per day are substantially limiting , and do not merely, as Defendant claims, affect only a single, particular job. The average person in the general population can work early hours and on call at night if necessary as a condition, manner or duration of performing the major life activity of working, but Plaintiff clearly could not.

It is also not sufficient to defeat Plaintiff's ADA claim that Plaintiff's nurse practitioner stated that his mental conditions would not keep Plaintiff from working. This action would not even be pending if Plaintiff did not think he was capable of working.

The question of whether an individual is disabled under the ADA thus remains an individualized inquiry, and in this case a jury reasonably could find that Plaintiff was disabled under the ADA because he was substantially limited in the major life activities of caring for himself, sleeping, and thinking.

b. Record of Disability

Plaintiff is a qualified individual with a disability also because of a record of a disabling impairment. That is so based upon the request to Defendant, written by his nurse practitioner, requesting an accommodation due to his nighttime medicine regimen. Defendant concedes that it received such request, but yet contradictorily asserts that it had no record of Plaintiff's impairment because it did not receive notice of the impairment until three days prior to Plaintiff' termination. There is no time limit under the ADA for giving a notice of an impairment. Once

notice is given, the employer is required to engage in an interactive process to learn of any reasonable accommodations that may be available. Instead, plaintiff was terminated three days later. Moreover, plaintiff had no idea that he was going to be terminated three days later so the argument that not enough notice was given is illogical.

Taking into account the entire summary judgment evidence of Plaintiff relevant to the issue whether he had a record of disability from the standpoint of Defendant, such evidence conclusively establishes that to be the case. It establishes that Defendant was specifically aware of Plaintiff's condition. Accordingly, Defendant simply cannot claim he did not appreciate Plaintiff as having a record of disability.

Since plaintiff clearly establishes a disability under the first two provisions of the definition, the third definition of whether he was regarded as having an impairment is moot.

**Accommodation Request and Interactive Process**

Defendant only addresses the issue of accommodation in one sentence of its brief stating that "allowing employees to come into work whenever they please would be an undue hardship and unreasonable accommodation." However, Plaintiff did not request that he come into work whenever he pleases, nor did Defendant even engage in any interactive process to be informed of Plaintiff's condition and if or what accommodations were available. Plaintiff, in fact, requested to be taken off of rotation to on call at night and his supervisor told him that "everyone has to be on call." (Exhibit B, Plaintiff's Depo., pp. 39-40)

Q, The letter that was referred to earlier from your nurse practitioner, did you give it to anyone at work?

A. Yes, sir. Jamie Fontenot.

7

> Q. And what did Mr. Fontenot tell you in response to you giving him the letter?
>
> A. He said you go to talk to the board because everyone there has got to be on call. ....
>
> Q. After you gave him the letter, do you recall what happened to you next?
>
> A. Yes, sir. Three days – two days later, I was terminated.

The ADA does not favor the argument that an accommodation can be completely refused, much less that an accommodation can be refused without discussing the issue. An employer generally has to discuss with an employee whether accommodations are possible. Once an employee has made a request for an accommodation, the ADA regulations make it necessary for the employer to initiate an informal interactive process. 29 C.F.R. § 1630.2(o)(3). The Interpretative Guidance further not only reinforces this directive but stresses that the interactive process requires the input of the employee as well as the employer. See 29 C.F.R. Pt. 1630, App. § 1630.9 at 359 (referring to the requirement as a "flexible, interactive process that involves both the employer and the qualified individual with a disability"). Defendant omitted to even pursue this process with Plaintiff prior to his termination. That is simply illegal. *Cutrera v. Board of Supervisors of Louisiana State Univ.*, 429 F.3d 108 (5th Cir. 2005). "[A]n employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended." *Id*. at 113. Once an employee has made his condition known, identified the workplace problem his condition causes and has taken steps to ask for an accommodation, the employer may not simply avoid its duty to engage in an interactive process by terminating the employee. *Cutrera*, 429 F.3d at 113. Rather, it must go through the interactive process. *Id*. See also *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735-36 (5th Cir. 1999) (when an employer's

unwillingness to engage in a good faith interactive process leads to a failure to reasonable accommodate an employee, the "employer violates the ADA");

Also, see *Bartee v. Michelin North America. Inc*., 374 F.3d 906 (10th Cir. 2004). The court in Bartee stated: While "[t]he exact shape of this interactive dialogue will necessarily vary from situation to situation and no rules of universal application can be articulated,"*Id.* at 1173, "[t]he interactive process [necessarily] includes good-faith communications between the employer and employee[,]. *Id.* at 1172. As such, after receiving notice from Mr. Bartee, Michelin had a duty to engage with him in a good faith effort to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* at 1171. Mr. Bartee produced evidence at trial showing that Michelin failed to participate in such an interactive process. Reading the evidence in the light most favorable to Mr. Bartee, Michelin did not inquire about his restrictions or about the accommodations that he needed to perform the planning position. Instead, Mr. Warner, Mr. Bartee's former area personnel manager, offered the planning job to Mr. Bartee without assessing any of its requirements. Michelin did not offer any position modifications to Mr. Bartee nor did it provide any evidence showing that shortening this position's working eight hours requiring a larger card would disrupt essential functions of the job. In fact, the record does not indicate any accommodations offered to Mr. Bartee by Michelin other than the re-wheeled cart, which marked as to Mr. Bartee already stated was too small for his use. The record, then, provides sufficient grounds for the jury to conclude that Michelin failed to reasonably accommodate Mr. Bartee, we affirm the District Court's denial of Michelin's motion motions for judgment as a matter of law. *Id.* at 916.

In this case, there was no interactive process outlined in *Bartee*,. Accordingly, Defendant

9

cannot claim that Plaintiff was not a qualified person with a disability and it is also liable for denial of reasonable accommodations.

Even if Plaintiff could be required to address accommodations in the context of a position he was never allowed to even attempt to perform, this Court must reject Defendant's argument that accommodating Plaintiff was unreasonable and an undue hardship.

Defendant makes its argument based upon the provisions of the ADA requiring only reasonable accommodations and also, even where accommodations are reasonable, not necessitating them if doing so would cause undue hardship to an employer. 42 U.S.C. § 12111(9), (10). Defendant, however, seemingly not aware of inconsistency of doing so, argues both that the accommodations would have been unreasonable and an undue hardship. Defendant bases its argument on the reasoning that "allowing employees to come in whenever they please" would be unreasonable and an undue hardship."

Defendant, seemingly recognizing the possibility that it did have a duty to accommodate Plaintiff, suggests, in the alternative, that any accommodation was such a hardship that it could abandon accommodations previously provided without even discussions with Plaintiff. There are multiple problem with Defendant's argument. First, Defendant was still subject to the ADA and no less obligated to explore, and provide a reasonable, or any accommodations which would enable the employee to perform in his position. Second, Defendant also still had an obligation to discuss with Plaintiff possible accommodations. It was not enough for it to speculate, as it does, that any accommodations or one that was never even requested by plaintiff was unreasonable or an undue hardship.

**Prima Facie Case of Failure to Accommodate - No Shifting Burden**

When only indirect or circumstantial evidence is available, a plaintiff alleging a violation of the ADA must meet the burden-shifting framework of *McDonnell Douglas v. Chevron Phillips*, 570 F.3d at 615, citing *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 279 (5th Cir.2000). Thus the plaintiff must first make a prima facie showing of discrimination under the ADA, i.e., that (1) he is disabled, has a record of having a disability, or is viewed as disabled; (2) he is qualified for his job; (3) he was subjected to an adverse employment action on account of his disability or the perception of his disability; and (4) he was replaced by, or treated less favorably than, non-disabled employees. *Id*. Then, if the plaintiff succeeds, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. The plaintiff must then show either that the employer's reason is not true, i.e. pretextual, or that the defendant's reason while true, is only one reason for its conduct and another <u>motivating factor</u> is the plaintiff's protected characteristic, under the ADA his disability. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir.2004).

Pursuant to the ADA, "discrimination" also includes an employer's "not making reasonable accommodations to the known physical or mental limitation of an otherwise qualified ... employee, unless the employer can demonstrate that the accommodation would impose an "undue hardship" on the operation of the business. 42 U.S.C. § 12112(b)(5)(A). Accordingly, for Plaintiff to establish a prima facie case of discrimination based on Defendant's failure to provide a reasonable accommodation, he must show: (1) that he is an individual who has a disability within the meaning of the ADA; (2) that Defendant is covered by the ADA and had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of his position or another available position within the company; and (4) that Defendant refused to

make such accommodation. *Davis v. City of Grapevine*, 188 S.W.3d 748, 758 (citing *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 (4th Cir. 2001).

If a plaintiff proves a prima facie case of a claim for failure to accommodate, the plaintiff will have established a direct violation of the ADA and the McDonnell Douglas burden-shifting test does not apply. *Davis v. City of Grapevine*, 188 S.W.3d at 758 (citing *Bultemeyer v. Fort Wayne Cmty. Schools*, 100 F.3d 1281, 1283 - 84 (7th Cir. 1996)). The only defense then for failure to provide a reasonable accommodation would be for the employer to demonstrate that the accommodation would impose an undue burden on the operation of its business. 42 U.S.C. § 12112(b)(5)(A). In reaching the conclusion that the McDonnell Douglas burden-shifting test is inappropriate in claims for failure to provide a reasonable accommodation, the Seventh Circuit reasoned that if the plaintiff proved the elements alleged - that he was an otherwise qualified person with a disability and that his employer failed to provide him a reasonable accommodation - he would establish a direct violation of the ADA, and thus, there would be no need for any indirect proof and burden-shifting. *Davis v. City of Grapevine*, 188 S.W.3d at 758 (citing *Bultemeyer v. Fort Wayne Cmty. Schools*, 100 F.3d 1281, 1283 - 84 (7th Cir. 1996)).

Accordingly, Plaintiff has brought forth sufficient summary judgment evidence to create a genuine issue of material fact regarding such elements and having done so, Defendant is not entitled to summary judgment on this claim. Furthermore, this Court should not apply the McDonnell Douglas burden-shifting analysis to Plaintiff's claim for failure to provide a reasonable accommodation because Plaintiff's summary judgment evidence shows a direct violation of the ADA, and there should be no consideration of Defendant's articulated reason for failing to provide a reasonable accommodation as required by the ADA.

**Retaliation**

A claim of unlawful retaliation under the ADA, as under Title VII, requires a plaintiff to make a prima facie case by showing that (1) he or she engaged in an activity protected by the ADA, (2) he or she suffered an adverse employment action, and (3) there is a causal connection between the protected act and the adverse action. *Seaman v. CSPH*, 179 F.3d 297, 301 (5th Cir.1999). If the plaintiff succeeds, the employer must present a legitimate, nondiscriminatory reason for the retaliatory adverse employment action. *Id.* at 301. If the employer succeeds, the plaintiff must then show that the employer's proffered reason is a pretext for discrimination.

With regard to retaliation claims, the Fifth Circuit has ruled that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Dooley v. Parks and Recreation for Parish of East Baton Rouge*, 433 Fed.Appx. 321, 324 (5th Cir.2011), citing *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.1997), citing *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993). Once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 656 (5th Cir.2004).

For a retaliation claim under the ADA,, there is no requirement that the plaintiff suffer from an actual disability; the plaintiff need only demonstrate that the plaintiff has a reasonable good faith belief that the statute has been violated. *Tabatchnik*, 262 Fed.Appx. at 676 & n. 1 (failure to prove a disability does not preclude the plaintiff from pursuing a retaliation claim). Where an employee has a good faith belief that he is disabled or perceived as disabled, making a request

for a reasonable accommodation under the ADA may constitute engaging in a protected activity. *Id*., citing 42 U.S.C. § 12112(b)(5)(A) (statute requires "making reasonable accommodations to known physical or mental limitations of an otherwise qualified individual with a disability who is ... an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.").

Here, it is undisputed that Plaintiff requested an accommodation for his disability which protected activity and that he was fired three days later. The causal link required by the third prong of the prima facie case does not rise to the level of a "but for" standard. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). The Fifth Circuit, in *Nowlin*, supra, has recognized that "[e]mployers rarely leave concrete evidence of their retaliatory purposes and motives." Thus, proof of retaliatory motive must necessarily be based largely upon an evaluation of the circumstantial evidence of the case. 33 F.3d at 508.

Plaintiff has shown a sufficient temporal link between his protected activities and his termination, in that he has demonstrated that the termination of his employment occurred three days after his employer received his request for an accommodation. Such connection is sufficient to establish causation and to raise genuine issues of fact regarding the pretextual nature of the actions. Both the United States Supreme Court and the Fifth Circuit have recognized that a significant factor in evaluating whether a discharge or other adverse employment action is the result of retaliatory motives is the temporal relationship between the employee's conduct and the discharge. *Clark County School District v. Breedon*, 532 U.S. 268, 121 S.Ct. 2264 (2001), *Nowlin*, 33 F.3d at 508; *Ware v. CLECO Power*, LLC, 90 Fed. Appx. 705 (5th Cir. 2004).

Furthermore, Defendant's proffered reasons for Plaintiff's termination are for tardiness and

absences. However, a portion of these days that he was absent are because he had an injury at work, for the death of his father, and regarding sleep problems or drowsiness caused by his medicine and/or his mental impairments. (Exhibit B, Plaintiff's Depo., pp. 40-42). The nurse practitioner also testified that someone with sleeping problems and depression could be late for work occasionally, and it would not be abnormal to be late. (Exhibit A, Smith's Depo. pp. 39-40). Had Defendant engaged in the proper interactive process after learning of his mental conditions, it is likely that accommodations could have been made to Plaintiff's schedule to alleviate the exact reasons why Defendant states that he was terminated. Moreover, by the calendar given to us by the Defendant in discovery (Exhibit C), it appears that all of the employees working there at the time called in sick multiple times and left early for doctor's appointments, etc. This, along with the temporal aspect of termination three days after requesting an accommodation, gives enough genuine issues of fact to show pretext.

Therefore, there are genuine issues of material fact pertaining to whether or not Plaintiff's firing was discriminatory and summary judgment is not proper.

**CONCLUSION**

Accordingly, when viewing these issues in light most favorable to Blackard, genuine issues of material fact exist on the question of whether Defendant engaged in the proper interactive process after Plaintiff requested an accommodation and whether or not Plaintiff's termination was motivated by illegal discrimination.

Respectfully Submitted:

*s/Gregory J. Miller*
Gregory J. Miller No. 17059
**MILLER& HAMPTON**
3960 Government Street
Baton Rouge, LA 70806
Telephone:  (225) 343-2205
Facsimile:  (225) 343-2870
Attorney for Chad Blackard

## CERTIFICATE OF SERVICE

I, Gregory J. Miller, hereby certify that a copy of the foregoing has this day been sent electronic filing to counsel of record as follows:

Colt Fore
D. Blayne Honeycutt
519 Florida Avenue, SW
Denham Springs, LA 70726

Baton Rouge, Louisiana, this 4th day of September.

*s/ Gregory J. Miller*
Gregory J. Miller