# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CHAD BLACKARD                                CIVIL ACTION

VERSUS                                         NO. 12-704-SDD-RLB

LIVINGSTON PARISH SEWER DISTRICT

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by the Defendant, Livingston Parish Sewer District. Plaintiff, Chad Blackard, has filed an *Opposition*[2] to the motion. For the reasons which follow, the motion is GRANTED.

## I. FACTUAL BACKGROUND

Plaintiff was employed by the Defendant as a mechanic. Plaintiff contends he suffers from bipolar disorder, depression, anxiety, and ADHD, which he argues are mental disabilities protected by the Americans with Disabilities Act ("ADA").[3] Plaintiff claims that on July 24, 2012, he submitted to his employer a letter from his doctor regarding his diagnoses and requesting an accommodation that he not be required to carry a pager for on-call duty during the night based on the effects of his prescription medication. The Defendant contends that, following notice of Plaintiff's mental conditions, an accommodation was provided so that the Plaintiff no longer had to

---

[1] Rec. Doc. No. 12.

[2] Rec. Doc. No. 16.

[3] 42 U.S.C. §§ 12101 *et seq.*

Doc 324                                                   1

work at night.[4] Plaintiff claims no accommodation was ever made, and that he was terminated three days after his request for accommodation on July 27, 2012. Plaintiff filed this suit under Title II of the ADA and Section 504 of the Rehabilitation Act of 1973,[5] arguing he has been discriminated against on the basis of his disabilities and also that he was subjected to retaliatory termination for requesting an accommodation.

The Defendant moves for summary judgment arguing that the Plaintiff is not "disabled" for purposes of the ADA, that it granted a reasonable accommodation to Plaintiff by removing him from on-call night duty, and that it terminated Plaintiff solely for his continual absenteeism and tardiness and without any connection to an alleged disability.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]

---

[4] Rec. Doc. No. 5, ¶ 7.

[5] 29 U.S.C. § 794 *et seq.*

[6] Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

Doc 324      2

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[8] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[9]

If the moving party meets this burden, Rule 56 (c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[10] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[11] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[12] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[13] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[14]

---

[8] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (*quoting Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[9] *Id.* at 1075.

[10] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[11] *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

[12] *Wallace*, 80 F.3d at 1048 (*quoting Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[13] *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## B. ADA Discrimination

The ADA "prohibits an employer from discriminating against 'an individual with a disability' who with 'reasonable accommodation' can perform a job's essential function..."[15] To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) he was "disabled"; (2) he was qualified for the job; and (3) the defendant subjected him to an adverse employment decision because of his disability.[16] If this burden is met, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision.[17] Once the employer proffers such a reason, the burden shifts back to the plaintiff to prove that the reason was merely a pretext for discrimination.[18]

### 1. Was Plaintiff Disabled?

To set forth a *prima facie* case of discrimination under the ADA, a plaintiff must first establish that he has a disability.[19] The term "disability" encompasses the following: (1) a mental or physical impairment that substantially limits one or more major life activities of an individual, (2) a record of such impairment, or (3) being regarded as having such impairment.[20] To survive summary judgment, "a plaintiff must prove a substantial limit with specific evidence that his

---

[15] *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)(quoting 42 U.S.C. § 12112(a)).

[16] *See Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474 (5th Cir. 2006).

[17] *See Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003); *McInnis v. Alamo County Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000).

[18] *McInnis*, 207 F.3d at 280.

[19] *See Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996), *cert. denied*, 519 U.S. 1093 (1997); *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998).

[20] 42 U.S.C. § 12102(2).

*particular* impairment substantially limits his particular major life activity."[21] Thus, an analysis of whether a plaintiff suffers from a disability within the meaning of the ADA requires three inquiries: (1) whether he suffered from a physical or mental impairment; (2) whether the physical or mental impairment limited any major life activity; and (3) whether the limitation was substantial.[22] These questions must be determined on an individualized, case-by-case basis.[23]

### a. Physical or Mental Impairment

In determining whether an impairment should be classified as a covered disability, the ADA implementing legislation provides factors to consider, including: (1) the nature and severity of the impairment; (2) the duration of the impairment; and (3) the long-term impact of the impairment.[24] Plaintiff contends that he suffers from bipolar disorder, depression, anxiety, and ADHA, which are mental impairments as contemplated by the law. Emotional or mental illness can be a "mental impairment."[25] It is undisputed that Plaintiff was diagnosed with, and is being treated for, these conditions. It is also undisputed that Plaintiff's nurse practitioner testified that Plaintiff was not "disabled" and that Plaintiff could work with the only restriction that he not drive after taking Klonopin.[26] Plaintiff himself also testified that he has never been diagnosed with a "mental

---

[21] *Waldrip v. GE*, 325 F.3d 652, 656 (5th Cir. 2003)(emphasis in original).

[22] *Dupre v. Charter Behavioral Health Sys.*, 242 F.3d 610, 613 (5th Cir. 2001)(citing *Bragdon v. Abbott*, 524 U.S. 624, 630-631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)).

[23] *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002)(superceded in part by statute).

[24] *Aguillard v. Mukasey*, 295 F. App'x 619, 622 (5th Cir. 2008)(quoting 29 C.F.R. § 1630.2(j)(2).

[25] *See* 29 C.F.R. § 1630.2 (h)(2).

[26] Rec. Doc. No. 12-8, pp. 21-22.

Doc 324    5

Case 3:12-cv-00704-SDD-RLB    Document 17    09/12/13    Page 5 of 14

disability" by any doctor.[27] Thus, the Court must determine if Plaintiff's mental impairments substantially limit a major life activity.

### b. Impairment of a Major Life Activity & Substantial Limitation

"In order to show an impairment that 'substantially limits a major life activity,' the plaintiff, 'must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.'"[28] The term "major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[29] Additionally, the Fifth Circuit has held that sleeping is a major life activity.[30] The ADA requires the impairment to be substantial: "An impairment substantially limits a major life activity if it makes an individual completely unable to perform the activity or if it 'significantly restricts the duration, manner, or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity.'"[31]

Plaintiff contends his mental impairments substantially limit the major life activities of sleeping and working. To establish a substantial limit in the major life activity of sleeping, a plaintiff "must present evidence, beyond vague assertions of a rough night's sleep or a need for medication,

---

[27] Rec. Doc. No. 12-7, p. 30.

[28] *Carter v. Ridge*, 255 F. App'x 826, 829, 2007 WL 4104349, *3 (5th Cir. 2007)(quoting *Toyota*, 534 U.S. at 197).

[29] 29 C.F.R. § 1630.2(I).

[30] *EEOC v. Chevron Phillips Chemical Co., L.P.*, 570 F.3d 606, 616 (5th Cir. 2009).

[31] 29 C.F.R. § 1630.2

Doc 324                               6

Case 3:12-cv-00704-SDD-RLB   Document 17   09/12/13   Page 6 of 14

that his affliction is worse than that suffered by a large portion of the nation's adult population."[32]

Although Plaintiff contends that his mental impairments substantially limit his major life activity of sleeping, he provides no evidence or discussion of his own sleep patterns and how they compare to the average person. He simply alludes to a sleeping problem as the reason for his repeated tardiness at work. The record is devoid of any mention of Plaintiff's sleep limitation other than to acknowledge that the medicine he takes for his mental conditions make him sleepy and apparently causes him to oversleep. This is insufficient under the law and jurisprudence to establish that Plaintiff is substantially limited in the major life activity of sleeping.

The record likewise fails to support Plaintiff's claim that he is substantially limited in the major life activity of working. Plaintiff argues that "[e]arly work hours and the mandatory requirement to be on a rotation to be on call at night ... would knock Plaintiff out of any jobs having a potentially irregular schedule or significant overtime."[33] Plaintiff contends he is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes based on his inability to work night shifts or be on call. The Fifth Circuit has addressed similar arguments and found them without merit.

In *Curl v. United Supermarkets, Ltd.*, the Fifth Circuit affirmed summary judgment in favor

---

[32] *Carter*, 255 F. App'x at 830, quoting *Nadler v. Harvey*, 2007 WL 2404705, at *5-6 (11th Cir. Aug. 27, 2007); *Pedroza v. Autozone*, 536 F.Supp.2d 679, 696 (W.D. Tex. 2008)(the inability to enjoy more than three or four hours of uninterrupted sleep does not qualify as a substantial limitation); *see also, Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006)("intermittent disrupted sleep" is not a substantial limitation); *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316-17 (6th Cir. 2001)(sleeping only four to five hours per night was not a substantial limitation and stating, "[w]hile less than five hours sleep is not optimal, it is not significantly restricted in comparison to the average person in the general population."); *Pack v. Kmart Corp.*, 166 F.3d 1300, 1306 (10th Cir. 1999)(plaintiff's depression-related sleep difficulties, limiting her to two or three hours of sleep some nights, was not a substantial limitation).

[33] Rec. Doc. No. 16, p. 5.

Case 3:12-cv-00704-SDD-RLB    Document 17    09/12/13    Page 7 of 14

of an employer where the plaintiff-employee sued for discrimination under the ADA.[34] The plaintiff had claimed he was disabled due to his bipolar disorder, which he argued substantially limited him in the major life activities of sleeping, concentrating, interacting with crowds of people, thinking, and hearing.[35] The court held that Curl's "primary evidence consists of bald assertions based on textbook explications of the types of symptoms people with his impairment might experience, failing to show Curl's own symptoms - his own 'own experience' of substantial limitation."[36] Curl had also argued that his impairment substantially limited the major life activity of working because he could not work night shifts. The court rejected this argument as well, stating:

> He points only to Department of Labor statistics showing that over four million positions in various industries involve night shifts, allegedly showing he is "unable to perform a broad range of jobs in numerous industries." Not only are these statistics too broad because not limited to Curl's specific geographic area or people within "comparable training, skills, or abilities," but Curl's inability to perform a job at certain times - as opposed to an inability to perform the job in general - is an insufficient "inability to perform one aspect of a job while retaining the ability to perform the work in general..."[37] Indeed, Curl concedes that he could perform the work of a doughnut fryer during the day and that he held daytime bakery and sales positions after leaving United. Curl was not unable to work a "broad range of jobs in various classes," **he was only unable to work any job at a range of times.**[38]

A similar decision was reached in *Carter v. Ridge*.[39] In *Carter*, the plaintiff was a pilot

---

[34] No. 05-10316, 179 Fed. Appx. 208, 2006 WL 1096696 (5th Cir. Apr. 26, 2006).

[35] *Id.* at 209.

[36] *Id.*

[37] *Id.* at 210, citing *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir. 1995)(holding that plaintiff's inability to perform welding job requiring climbing due to her injured arm because she could work as a welder in general).

[38] *Id.* (emphasis added).

[39] No. 07-20275, 255 F. App'x 826, 2007 WL 4104349 (5th Cir. Nov. 19, 2007).

Case 3:12-cv-00704-SDD-RLB   Document 17   09/12/13   Page 8 of 14

employed by the Department of Homeland Security who argued that he was an individual with a disability because his Post-Traumatic Stress Disorder ("PTSD") substantially limited his major life activities of sleeping and working.[40] The Fifth Circuit affirmed summary judgment in favor of the employer, finding that Carter was not substantially limited in the major life activity of working simply because he could not pilot single engine piston driven aircraft but could operate other types of aircraft.[41] The court also rejected Carter's argument that he was substantially limited in the major life activity of sleeping. Carter's physician had testified that Carter was experiencing some sleep disturbance making him tired, fatigued, and uncomfortable. The physician classified "sleep disturbance" as "less than normal sleep" and noted that Carter was getting less than five hours of sleep a night. The Court held that "Carter's sleep was limited by his PTSD, but [the evidence] did not establish that he was substantially impaired in the major life activity of sleeping. Thus, the district court correctly found that Carter had not presented sufficient evidence to raise a genuine issue of material fact as to whether his PTSD substantially limited his major life activity of sleeping."[42]

The jurisprudence and the facts of this case clearly support a finding that the Plaintiff suffers mental impairments, but these impairments do not substantially limit his major life activities of sleeping and working. As such, the Plaintiff is not "disabled" for purposes of the ADA.[43]

---

[40] *Id.* at 829.

[41] *Id.* at 830.

[42] *Id.*, citing *Nuzum v. Ozark Auto Distribs.*, 432 F.3d 839, 848 (8th Cir. 2005)(finding that sleeping two and a half hours at a time and five hours a night is not substantially impaired).

[43] Because the Court has ruled that Plaintiff is not an individual with a disability under the ADA, which is the first requirement to establish a *prima facie* case for a denial of reasonable accommodation claim, the Court also grants summary judgment in favor of the Defendant on this claim.

Doc 324            9

## 2. Was Plaintiff Qualified for the Job?

Curiously, neither party actually addresses the nature of Plaintiff's job as a mechanic or the specific job duties he is required to perform. As such, the Court cannot determine on the current record if Plaintiff was, in fact, qualified for the position he held. However, because the Court has already found that Plaintiff is not "disabled" under the ADA, this analysis is unnecessary. The Court finds that summary judgment is proper in favor of the Defendant on the ADA discrimination claim.

### C. Retaliation under the ADA

Plaintiff also claims that he was terminated three days after having requested a reasonable accommodation for his alleged disability in violation of the ADA. To establish a *prima facie* case of unlawful retaliation, plaintiff must show that he: (1) engaged in a protected activity, (2) suffered an adverse employment action, and (3) a causal connection exists between the activity and the action.[44] If a plaintiff can establish these factors, the burden shifts to the Defendant to provide a legitimate, non-discriminatory reason for taking the adverse action.[45] If provided, the plaintiff "must adduce sufficient evidence that the proffered reason is a pretext for retaliation."[46] Further, plaintiff must show that, "but for" the protected activity, the adverse employment action would not have occurred.[47]

In this case, Plaintiff has clearly established a *prima facie* case of retaliation. Plaintiff

---

[44] *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

[45] *Id.*

[46] *Id.*

[47] *Id.* The Plaintiff is incorrect that a "but for" standard is not required for this claim. *University of Texas Southwestern Medical Center v. Nassar*, — U.S. —, 133 S.Ct. 2517 (2013).

engaged in protected activity by requesting a reasonable accommodation, suffered an adverse employment action by being terminated, and the temporal proximity between these actions establishes a causal connection on its face. However, the Defendant has provided a legitimate, non-discriminatory reason for Plaintiff's termination. The record establishes that Plaintiff had a long history of absenteeism and tardiness. Plaintiff attempts to explain away these problems, stating that "a portion of these days ... are because he had an injury at work, for the death of his father, and regarding sleep problems caused by drowsiness caused by his medicine and/or mental impairments."[48] Plaintiff also cites the testimony of his nurse practitioner that someone with sleeping problems and depression might be late for work on occasion.[49] Plaintiff further argues that, based on the calendar submitted by the Defendant, several other employees called in sick and left early for doctor's appointments on multiple occasions, which he contends is further evidence of pretext.

Plaintiff's arguments are without merit and unsupported by the record. First, the Court notes that Plaintiff's well-documented tardiness and excessive absenteeism long pre-date his notice to the Defendant of his alleged disability and request for accommodation. The record reflects that Plaintiff was placed on probation for these problems on July 12, 2012, and that Plaintiff continued to be late for work or sometimes not show at all. It is clear that the Defendant placed Plaintiff on probation for these problems prior to having any notice of his alleged disabilities. Further, on July 27, 2012, Plaintiff failed to show up for work at all, and has completely failed to address this aspect of his termination.

---

[48] Rec. Doc. No. 16, p. 15.

[49] *Id.*, citing Rec. Doc. No. 12-8, pp. 39-40.

Case 3:12-cv-00704-SDD-RLB Document 17 09/12/13 Page 11 of 14

The Court is also unpersuaded that other employees were treated more favorably with regard to sick leave based on Plaintiff's "calendar" evidence. Plaintiff's employment records show that he had taken more than 109 hours of sick leave before July 27, 2012, despite the fact that the Defendant only allows an employee 80 hours of sick leave in an entire year. Plaintiff offers no evidence that the other employees with whom he compared himself had so vastly exceeded the allowable sick days for the year, or that they also were on probation for habitual tardiness and absenteeism.

The *Carter* case discussed above also involved a claim of retaliation.[50] The court found that the defendant had offered a legitimate, non-discriminatory reason for Carter's termination in that he refused to accept his directed reassignment. Carter argued he had shown pretext for this decision by showing that other pilots were permitted to fly only one type of aircraft and he was not.[51] The Fifth Circuit stated, "[i]t is true that a plaintiff may establish pretext by demonstrating that, under similar circumstances, other employees who had not engaged in protected activity were treated differently."[52] However, the court continued:

> [T]he Agency does not assert that Carter was removed because he was unable to fly two types of aircraft; they claim he was removed because of his refusal to accept the directed reassignment. Therefore, to show pretext here based on dissimilar treatment, Carter would have to show that other employees who had refused a directed reassignment were not terminated. Carter's argument – that other pilots were permitted to fly only one type of plane and he was not – would only be relevant to a claim that the underlying directed reassignment based on his inability to fly two planes was retaliatory. He has presented no evidence that the Agency's reason for the removal itself was retaliatory. The district court's grant of summary judgment

---

[50] *Carter*, 255 F. App'x 826.

[51] *Id.* at 831-32.

[52] *Id.* at 832, citing *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007).

Doc 324                              12

Case 3:12-cv-00704-SDD-RLB   Document 17   09/12/13   Page 12 of 14

was proper.[53]

Similarly, in *Conner v. Louisiana Department of Health and Hospitals*, the plaintiff sued her former employer for retaliation under the ADA.[54] The defendant had terminated Conner for her absenteeism, but Conner alleged that her termination was retaliation for claiming disability discrimination. Summary judgment was granted in favor of the employer, and the Fifth Circuit affirmed the district court's finding that absenteeism was a legitimate, non-discriminatory reason for Conner's termination for which she could not offer evidence of pretext.[55]

Likewise, in *Sanchez v. United States Postal Service*, a former postal employee sued the Post Office for retaliation under the ADA and other statutes.[56] The district court granted summary judgment in favor of the Post Office, and the Fifth Circuit affirmed as follows:

> Even assuming *arguendo* that Sanchez has established a prima facie case, his retaliation claim still fails. The USPS has set forth a legitimate, non-discriminatory reason for firing Sanchez: Sanchez's 301 hours of unscheduled sick leave. Sanchez admits he had "absenteeism issues" and only submitted documentation for less than half of his absences. He argues instead, that the temporal proximity between his firing and his EEO complaint supports his claim. That is not sufficient to create a material issue of pretext. As this court has held, "temporal proximity alone is insufficient to prove but for causation."[57]

Applying the law and jurisprudence to the facts of this case, the Court finds that Plaintiff has failed to present evidence of pretext for the legitimate, non-discriminatory reason given for his

---

[53] *Id.*

[54] No. 12-31254, — F. App'x —, 2013 WL 3306355 (5th Cir. July 1, 2013).

[55] *Id.* at *3.

[56] No. 10-20512, 430 F.App'x 368, 2011 WL 2505084 (5th Cir. June 23, 2011).

[57] *Id.* at 371, quoting *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 808 (5th Cir. 2007).

Case 3:12-cv-00704-SDD-RLB   Document 17   09/12/13   Page 13 of 14

termination. Thus, summary judgment is proper in favor of the Defendant on Plaintiff's retaliation claim.

### III. CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment* filed by Defendant Livingston Parish Sewer District[58] is granted. Plaintiff's claims are dismissed with prejudice.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

BATON ROUGE, Louisiana, this 12 day of September, 2013.

SHELLY D. DICK, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[58] Rec. Doc. No. 12.

Doc 324

14