# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CHAD BLACKARD

CIVIL ACTION

VERSUS

NO. 12-704-SDD-RLB

LIVINGSTON PARISH
SEWER DISTRICT

## RULING

This matter is before the Court on the Plaintiff's *Motion for New Trial*.[1] The
Defendant has filed an *Opposition* to this motion.[2] For the reasons which follow, the Court
GRANTS the *Motion for New Trial*, applying the correct standard for determining "disability"
under the Americans with Disabilities Act ("ADA"). However, for the reason set forth below,
the Court ultimately reaches the same conclusion that the Defendant's *Motion for Summary
Judgment*[3] should be granted under the law and facts of this case.

## I.    MOTION FOR NEW TRIAL

A court should refrain from altering or amending a ruling or judgment under Rule
59(e) of the Federal Rules of Civil Procedure unless one of the following grounds is
present: (1) the judgment is based upon manifest errors of law or fact; (2) the existence of
newly discovered or previously unavailable evidence; (3) manifest injustice will result; or

---

[1] Rec. Doc. No. 19.

[2] Rec. Doc. No. 21.

[3] Rec. Doc. No. 12.

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 1 of 21

(4) an intervening change in controlling law has occurred.[4]  Further, "[a]ltering, amending, or reconsidering a judgment is an extraordinary measure, which courts should use sparingly."[5]  Thus, "rulings should only be reconsidered 'where the moving party has presented substantial reasons for consideration.'"[6]

The Court previously ruled that the Plaintiff, who suffers from bipolar disorder, depression, anxiety, and ADHD, was not disabled under the ADA.[7]  The Court also granted summary judgment in favor of the Defendant on Plaintiff's retaliation claim finding that Defendant presented a legitimate, non-retaliatory reason for Plaintiff's termination which Plaintiff failed to rebut with evidence of pretext.  The Defendant's proffered reason for termination was based on Plaintiff's excessive absenteeism and tardiness.[8]

Plaintiff contends that the Court committed manifest error in applying the stricter standard under the ADA rather than the less stringent standard for finding a disability following the 2008 Amendments to the ADA.  Plaintiff also complains that the Court failed to address his failure to accommodate claim in its previous *Ruling*.[9]  Because the Court

---

[4] *Collins v. Encompass Ins. Co.*, No. 06-8547, 2010 WL 1294056, * 2 (E.D. La. Mar. 26, 2010)(citing 11 Wright , Miller & Kane, Federal Practice & Procedure: Civil 2d § 2810.1, p. 125-27 (1995)).

[5] *Id.*, citing *Southern Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993); *see also* 11 Wright , Miller & Kane, Federal Practice & Procedure: Civil 2d § 2810.1, p. 124  (1995).

[6] *Id.*, quoting Wright & Miller at § 2810.1, p. 124; *see also Baustain v. Louisiana*, 929 F.Supp. 980, 981 (E. D. La. 1996).

[7] *See Ruling*, Rec. Doc. No. 17.

[8] The Court adopts by reference the Factual Background set forth in its previous *Ruling*, Rec. Doc. No. 17, pp. 1-2 and the Summary Judgment Standard as set forth on pp. 2-3.

[9] The Court noted in footnote 43 of its previous *Ruling* that, because it ruled Plaintiff was not an individual with a disability under the ADA, which was the first prong of a *prima facie* denial of reasonable accommodation claim, there was no need to further address the accommodation claim. Rec. Doc. No. 17, p. 9, n. 43.

failed to apply the less stringent standard following the 2008 ADA Amendments, the Court will grant Plaintiff's *Motion for New Trial* on these claims.[10]  Nevertheless, the Court reaches the same conclusion that summary judgment in favor of the Defendant is proper on Plaintiff's claims.

## II.    AMERICANS WITH DISABILITIES ACT: AMENDMENTS AND APPLICATION

### A.    Effect of 2008 Amendments to the ADA

The ADAAA, which amended the ADA, became effective on January 1, 2009, and expanded the coverage provided under the ADA.[11]  Particularly, the ADAAA instructs that "substantially limits" should not be as strictly construed as some courts have required in the past, and "should not require 'extensive analysis.'"[12] The court in *Garner v. Chevron Phillips Chemical Co., L.P.*, summarized the amendments as follows:

> The ADAAA has added "major bodily functions" (e.g., the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions) to the ADA's list of major life activities, including caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, standing, sitting, reaching, lifting, bending, reading, concentrating, thinking, communicating, and working, while defining "physical or mental impairment" as any physiological disorder or condition, cosmetic disfigurement or anatomical loss affecting one or more body systems, as well as mental or psychological disorder.[13]

> Moreover, while retaining the basic definition of disability under the ADA ("a physical or mental impairment that substantially limits one or more major life activities"), "disability" now includes an impairment that is episodic or in

---

[10] Plaintiff did not challenge the Court's *Ruling* granting summary judgment in favor of the Defendant on Plaintiff's retaliation claim. Thus, this portion of the Court's ruling is undisturbed and remains in effect.

[11] *Garner v. Chevron Phillips Chemical Co., LP*, 834 F.Supp.2d 528, 536 (S.D. Tex. 2011).

[12] *Id.* at 538, citing ADA Amendments Act of 2008, § 2(b)(5), 122 Stat. 3553, 3558.

[13] *Id.* at 538-39, citing ADA Amendments Act of 2008, Pub.L. No. 110–325, Sec. 4, § 3(2)(A) and (B), 122 Stat. 3553, 3555.

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 3 of 21

remission if it would substantially limit a major life activity when active; examples include epilepsy, hypertension, asthma, diabetes, major depression, bipolar disorder, schizophrenia, and cancer.[14] An impairment lasting less than six months can be substantially limiting.[15] An impairment that is in remission but may return in a substantially limiting form is a disability under the ADAAA.[16] The ADAAA also amended *Toyota*'s definition of "major life activity" as "activities that are of central importance to most people's daily lives," instead indicating that the word "major" must "not be interpreted strictly to create a demanding standard for disability."[17] Under the ADAAA, tasks involving major life activity of manual tasks, such as fine motor coordination, grasping, or pressuring, "need not constitute activities of central importance to most people's lives."[18] To be "substantially limiting" an impairment does not have to prevent or significantly restrict a person from performing a major life activity.[19]

Also, "mitigation measures (such as medications, medical devices and assistive technology) are ignored when assessing whether an impairment substantially limits a person's major life activities."[20] Furthermore, courts "may consider the negative effects of a mitigating measure, e.g., effects of medication, in determining whether the individual is substantially limited in a major life activity."[21]

## B.   *Prima facie* Disability Discrimination

A plaintiff who alleges discrimination on the basis of a disability establishes a *prima*

---

[14] *Id.* at 539, citing ADA Amendments Act of 2008, Sec. 4, § 3(4)(D), 122 Stat. 3553, 3555; 29 C.F.R. § 1630.2(j)(5).

[15] *Id.,* citing 29 C.F.R. § 1630.2(j)(1)(ix).

[16] *Id.,* citing  29 C.F.R. § 1630.2(j)(1)(vii).

[17] *Id.*, citing 29 C.F.R. § 1630.2(i)(2).

[18] *Id.*, citing Appendix to Part 1630, *Interpretive Guidance on Title I of the Americans With Disabilities Act* § 1630.2(l); 76 Fed.Reg. at 17008.

[19] *Id.* (citing *Id.*).

[20] *Id.*, citing ADA Amendments Act of 2008, Sec. 4 § 3(4)(E)(1), 122 Stat. 3553, 3556.

[21] *Id.*, citing ADA Amendments Act of 2008, Sec. 6 § 501( I )(h), 122 Stat. 3553, 3558.

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 4 of 21

*facie* case under the ADA "by showing that '1) he has a disability; 2) he is qualified for the position in which he seeks employment; and 3) he was discriminated against because of his disability.'"[22] The ADA places the burden on the employee to prove that he is a qualified individual with a disability.[23] A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[24] A plaintiff must show either that: "(1) he could perform the essential functions of the job in spite of his disability, or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job."[25]

      1.    Disability

    While Plaintiff correctly contends that the Court erroneously applied the stricter pre-amendment standard for disability under the ADA, the Fifth Circuit has held that, "[a]lthough the ADA Amendments Act of 2008 lowered the standard that plaintiffs must meet to show that they are disabled, a plaintiff must still show substantial limitation."[26] Plaintiff has offered scant evidence that he is substantially limited in any major life activity.

---

[22] *Green v. Medco Health Solutions of Texas, LLC*, — F. Supp.2d —, 2013 WL 2317054 (N.D. Tex. 2013)(quoting *Griffin v. UPS*, 661 F.3d 216, 222 (5th Cir.2011); *Maples v. Univ. of Tex. Med. Branch at Galveston*, No. 12–41226, 2013 WL 1777501, at *1–2, 2013 U.S.App. LEXIS 8535, at *4 (5th Cir. Apr. 26, 2013) (explaining that discrimination must be a "motivating factor" of the adverse action)).

[23] *See Rizzo v. Children's World Learning Ctrs., Inc.*, 213 F.3d 209, 218 (5th Cir. 2000).

[24] 42 U.S.C. § 12111(8).

[25] *Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999); *see Appel v. Inspire Pharms., Inc.*, 428 F. App'x 279, 284 (5th Cir. 6/7/11)("An employee who cannot perform essential job requirements, even with accommodation, is not a qualified person with a disability.").

[26] *Mann v. Louisiana High School Athletic Association*, — F. App'x —, 2013 WL 2475116, at *4 (5th Cir. 7/11/13)(citing ADA Amendments Act of 2008, Pub.L.No. 110-325, 122 Stat. 3553 (codified as amended in scattered sections of 42 U.S.C.) & 42 U.S.C. § 12102(1)(A)).

In fact, as set forth in the previous opinion, both Plaintiff and his nurse practitioner testified that he is not disabled.[27]

However, the regulations indicate that, in light of the principles set forth in the Amendments, certain types of impairments will be found, in virtually all cases, to constitute a "disability" under the ADA.[28] The regulations explain that, "[g]iven their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity" and therefore should demand only a "simple and straightforward" assessment.[29] For example, the regulations state that it "should easily be concluded" that:

> Deafness substantially limits hearing; blindness substantially limits seeing; an intellectual disability ... substantially limits brain function; partially or completely missing limbs or mobility impairments requiring the use of a wheelchair substantially limit musculoskeletal function; autism substantially limits brain function; cancer substantially limits normal cell growth; cerebral palsy substantially limits brain function; diabetes substantially limits endocrine function; epilepsy substantially limits neurological function; Human Immunodeficiency Virus (HIV) infection substantially limits immune function; multiple sclerosis substantially limits neurological function; muscular dystrophy substantially limits neurological function; and major depressive disorder, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, and schizophrenia substantially limit brain function....[30]

While "the Supreme Court has not decided what deference, if any, is due to

---

[27] *See* Rec. Doc. No. 12-8, pp.21-22 and Rec. Doc. No. 12-7, p. 30. The Court has serious doubt that Plaintiff has provided sufficient summary judgment evidence that he is disabled, even under the ADAAA. Plaintiff's only evidence is the deposition testimony of his nurse practitioner, not a medical doctor. Furthermore, the alleged letter requesting accommodation, of which there is no evidence in the record but Defendant acknowledged it received, was written by Plaintiff's nurse practitioner at Plaintiff's direction. Rec. Doc. No. 12-8, p. 21. However, the Court will resolve this issue in the light most favorable to Plaintiff.

[28] 29 C.F. R. § 1630.2(j)(3)(ii).

[29] *Id.*

[30] 29 C.F.R. § 1630.2(j)(3)(iii).

6

implementing regulations issued by the EEOC, it has relied on these regulations in analyzing cases, particularly when neither party to a case challenges their reasonableness."[31] Because neither party has challenged the reasonableness of the regulations, and the Court finds them to be instructive, the Court will find that Plaintiff has adequately alleged that he has a disability under the ADAAA. Thus, the Court will assume that Plaintiff is disabled for purposes of this opinion.

### 2. Qualified for the Position

Notably absent in any brief is an argument that Plaintiff is qualified for the position he held. As set forth above, a "qualified individual" is one who can, "with or without reasonable accommodation, perform the essential functions of the position" he holds or seeks.[32] Plaintiff argues that if he had been taken off night call, he would have been able to work. The Court finds, however, that while changing Plaintiff's hours may have addressed his tardiness, it fails to explain how this change or any other accommodation would have resolved his routine failure to appear for work even during the day. The question becomes whether the accommodation requested, namely being relieved of night call duty, would render the Plaintiff "qualified for the position." The Court is unpersuaded that allowing Plaintiff to come in later or to be removed from night call duty would have addressed the days that he failed to show for work at all.

In its original *Memorandum in Support of Motion for Summary Judgment*, the Defendant argued that a qualification for all employees is that they show up for work on a

---

[31] *Chevron Phillips*, 570 F.3d at 614 n.4.

[32] 42 U.S.C. § 12111(8).

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 7 of 21

routine basis and in accordance with their schedule.[33] The Defendant further argued that, while Plaintiff alleged that he was fired due to his inability to work night hours, the evidence in the case established that Plaintiff also failed to show up for work during the day.[34] Nowhere in Plaintiff's *Opposition* is this fact challenged or rebutted.

The jurisprudence on this issue is clear: "Regular attendance is an essential function of most jobs;"[35] "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."[36]

As referenced in the Court's previous *Ruling*, the undisputed record in this case establishes that Plaintiff was placed on probation by Defendant for excessive tardiness and absenteeism on July 12, 2012. This is evidenced by Plaintiff's signed acknowledgment wherein he stated: "I also understand that if I do not follow these rules and complete my duties I am subject to disciplinary actions and the possibility of termination of employment."[37] Despite this, Plaintiff continued to be late or not show up for work at all. It is clear that Plaintiff was placed on probation for these offenses prior to notifying

---

[33] Rec. Doc. No. 12-1, p. 10.

[34] *Id.*, citing Exhibits A,B,C,G, & H.

[35] *Hypes v. First Commerce Corp.*,134 F.3d 721, 727 (5th Cir. 1998); *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996)(holding that "[b]ecause [the plaintiff] could not attend work, he is not a 'qualified individual with a disability' under the ADA")(citing *Carr v. Reno*, 23 F.3d 525-30 (D.C. Cir. 1994)(holding that "coming to work regularly is essential function)).

[36] *Fuentes v. Krypton Solutions, LLC*,No. 11-581, 2013 WL 1391113 (E.D. Tex. 4/4/13), citing 42 U.S.C. § 12111(8).

[37] Rec. Doc. No. 12-3.

8

Defendant of Plaintiff's alleged disability and alleged request for accommodation. The first notice to Defendant of the Plaintiff's alleged disabilities and request for accommodation came on July 24, 2012. The Plaintiff next missed work on July 26, 2012 and was terminated on July 27, 2012. Plaintiff's undisputed employment records reveal that he had taken more than 109 hours of sick leave before July 27, 2012, the date of Plaintiff's termination, despite the fact that the Defendant allows only 80 hours of sick leave for each employee in an entire year. Thus, the undisputed facts show that Plaintiff was unable to perform an essential function of his job, that being regular attendance. Therefore, under the ADA, Plaintiff was not "qualified" and fails to carry his burden on this issue.

In *Hypes v. First Commerce Corp.*,[38] the Fifth Circuit addressed a similar scenario. Hypes was a loan review analyst who exhibited a pattern of absenteeism and tardiness.[39] Following his reassignment, Hypes continued to struggle with attendance and was diagnosed with chronic obstructive lung disease, which required him to temporarily miss work on a short-term basis for testing and treatment.[40] Hypes' physician indicated that following treatment, Hypes should be able to resume a normal work schedule with no restrictions.[41]

After returning to work, Hypes was informed by his supervisor that he would be expected to be at work regularly and on time, and any medical absences would need

[38] *See* n. 35, *supra.*

[39] *Id.* at 724.

[40] *Id.*

[41] *Id.*

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 9 of 21

proper documentation.[42] Hypes' immediate response was that he did not believe he could arrive at work at 8:30 a.m. or wear a neck tie. The employer denied both requests. Over the next two months, Hypes missed nine full days and seventeen half days of work resulting in his termination.[43] In affirming the district court's grant of summary judgment, the Fifth Circuit held that Hypes was not "otherwise qualified" for the position because "it was an essential function of his job, as a member of a team, that [plaintiff] be in the office, regularly, as near to normal business hours as possible, and that he work a full schedule."[44] Because of Hypes' excessive absenteeism, the court found that he "could not arrive at work early enough or often enough" to perform the job's essential functions.[45] Moreover, although Hypes did inform his employer that he would not be able to arrive at work at 8:30 a.m., he did not suggest an accommodation that would resolve this difficulty.[46] Furthermore, even if the employer had allowed Hypes a flex time schedule allowing him to arrive two hours later, the court concluded that such an accommodation would not have solved the problem of consistently arriving four hours late and missing entire days.[47] For this reason, the court upheld the summary judgment and determined Hypes was not "otherwise qualified."[48] The Fifth Circuit affirmed similar holdings in *Willi v. American*

---

[42] *Id.*

[43] *Id.* at 725.

[44] *Id.* at 726.

[45] *Id.* at 727.

[46] *Id.*

[47] *Id.*

[48] *Id.*

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 10 of 21

*Airlines Inc.*[49] and *Ceasar v. United Services Automobile Association*,[50] and other district courts governed by the Fifth Circuit have applied this same reasoning.[51]

Applying this reasoning to the facts in the pending matter, the Court finds that Plaintiff has failed to establish that he was a qualified individual because, with or without accommodation, Plaintiff could not perform his job's essential function of regular attendance. Plaintiff has failed to present any genuine issues of material fact on this issue.

## 3. Discriminated against "because of disability"

Plaintiff also fails to establish that he was subjected to discrimination because of his disability. As set forth above, Plaintiff's excessive tardiness and absenteeism long pre-date his notice on July 24, 2012 to the Defendant that he is allegedly disabled. Further, the record is replete with undisputed evidence that Plaintiff was excessively tardy and absent despite warnings and probation for same. Even if Plaintiff could establish a *prima facie* case for disability discrimination, he has completely failed to present any competent summary judgment evidence which would show that the proffered legitimate, non-discriminatory reason for Plaintiff's termination is a pretext for discrimination.[52]

---

[49] 288 F. App'x 126, 2008 WL 2570728 (5th Cir. 6/25/08).

[50] 102 F. App'x 859, 2004 WL 1448039 (5th Cir. 6/28/04).

[51] *See e.g., Fuentes, supra* n. 36 (Court held plaintiff was not "qualified individual" because he could not perform the job's essential function of regular attendance at the time of his termination.); *Yount v. S&A Restaurant Corp.*, No. 96-1400, 1997 WL 573463 (N.D. Tex. 9/8/97)(Court held plaintiff could not present *prima facie* discrimination claim under ADA because she was not qualified due to her "chronic absenteeism and tardiness").

[52] Plaintiff contends that Defendant's alleged failure to engage in the interactive process after a requested accommodation is direct evidence of discrimination thereby rendering the burden-shifting analysis of *McDonnell Douglas* inapplicable. The Court disagrees that Plaintiff has presented direct evidence of discrimination on this claim for reasons set forth later in this opinion.

11

## C. Failure to Make a Reasonable Accommodation/Engage in Interactive Process

Under the ADA, to "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[53] Further, "'[a]n employee who needs an accommodation because of a disability has the responsibility of informing [his] employer.'"[54] The Fifth Circuit has recognized that "'where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee ... to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.'"[55] "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation."[56] "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation."[57] "A disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously."[58] "The plaintiff bears the burden of proving that an available position exists

---

[53] 42 U.S.C. § 12112(b)(5)(A).

[54] *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir.2009).

[55] *Id.* at 621 (quoting *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir.1996).

[56] *EEOC v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir.2009).

[57] *Id.*

[58] *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 (5th Cir. 2007).

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 12 of 21

that he was qualified for and could, with reasonable accommodations, perform."[59]

To prevail on a claim of discrimination based on failure to accommodate a disability, the plaintiff must show that (1) the employer is covered by the statute; (2) he is an individual with a disability; (3) he can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide accommodation.[60] The plaintiff has the burden to show that the employer failed to implement a reasonable accommodation.[61]

The Defendant is clearly covered by the Act, and the Court will again assume that Plaintiff is an individual with a disability. However, for the same reasons set forth previously in this opinion, the Court finds that Plaintiff cannot establish that he could perform the essential functions of the job with or without reasonable accommodation because he did not regularly attend work. Further, the Court finds Plaintiff has failed to establish the fourth prong: that the Defendant had notice of the disability and failed to provide a reasonable accommodation.

### 1.  Accommodation Provided

In his *Motion for New Trial*, Plaintiff argues that "nowhere in Defendant's argument does it contend that it made a reasonable accommodation."[62] This, however, is not accurate. In its *Ruling*, the Court referenced the Defendant's *Answer* wherein it alleged

---

[59] *Id.* at 315.

[60] *Mzyk v. North East Indep. Sch. Dist.*, 397 F. App'x 13, 16 n. 3 (5th Cir.9/30/10) (citations omitted).

[61] *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 682 (5th Cir.1996).

[62] Rec. Doc. No. 19-1, p. 2.

Doc#771                                        13

that it took Plaintiff off night call duty.[63] The Court also considered as summary judgment evidence the *Affidavit* of Jaimie Fontenot,[64] Defendant's Operations Manager, attached to Defendant's *Motion for Summary Judgment*. Fontenot testified that he "took Chad Blackard off of 'night call' after receiving a letter from plaintiff's nurse practitioner."[65] Thus, summary judgment evidence was introduced showing that Defendant, although it did not consider the Plaintiff to have a disability, responded to the Plaintiff's nurse practitioner's letter by taking Plaintiff off of "night call" duty. Plaintiff testified in his deposition that, to his knowledge, he was never taken off night call duty.[66] However, Plaintiff also testified that Fontenot said everyone has to be on call, but he would "talk to the board."[67] Plaintiff's failure to report to work on the second day following his alleged accommodation request may have contributed to his lack of knowledge of such accommodation.

Alternatively, even if the Defendant had not provided this "night call" duty accommodation, the Plaintiff has not carried his burden of proving that such accommodation was reasonable in light of his persistent absenteeism. As stated previously, Plaintiff has failed to show how removing him from "night call" duty would have resolved his routine failure to appear for work when scheduled to work during the day.

        2.    Reasonableness

Curiously, neither party provided as an exhibit the letter from Plaintiff's nurse

---

[63] Rec. Doc. No. 5, ¶ 7.

[64] Rec. Doc. No. 12-9. The Court inadvertently failed to cite to this *Affidavit* in its previous *Ruling*; however, it was considered as summary judgment evidence which was not rebutted by the Plaintiff.

[65] *Id.* at ¶ 4.

[66] Rec. Doc. No. 16-2, p. 2.

[67] *Id.*

                14

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 14 of 21

practitioner allegedly advising the Defendant of Plaintiff's alleged disabilities and requesting some accommodation. The law is clear that, "'the ADA provides a right to *reasonable* accommodation, *not* to the employee's *preferred* accommodation.'"[68] Without knowing the exact accommodations requested, the Court assumes from the arguments that Plaintiff asked to be removed from "night call" duty and/or allowed to come in later. As discussed above, the record before the Court shows that Plaintiff was taken off night call duty. The only dispute is whether the Plaintiff was so advised. The Court does not believe, and the applicable jurisprudence does not appear to require, that an employer allow an employee to come in late or otherwise change his hours when that employee regularly fails to appear for work at all.[69] The Court is also unpersuaded that the Defendant was required to accommodate the Plaintiff by taking him off of night call duty because Plaintiff has offered no evidence that this request would accommodate Plaintiff in some way that would enable him to perform the essential functions of his job.

### 3. Interactive Process

Plaintiff also contends that once he submitted the letter requesting accommodation for his disabilities, the Defendant was obligated to engage in the interactive process required by the ADA. Under the facts of this case, the Court disagrees. In *Green v. Medco Health Solutions*,[70] a case decided by the district court for the Northern District of Texas, the plaintiff ("Green") made similar claims. Green was a customer service representative

---

[68] *Martel v. Evangeline Parish School Board*, No. 10-00878, 2012 WL 3637614, *8 (W.D. La. 8/21/12)(quoting *EEOC v. AgroDistrib.*, 555 F.3d 462, 471 (5th Cir. 2009)(emphasis in original)).

[69] *See Hypes, supra.*

[70] 947 F. Supp. 2d 712 (N.D. Tex. 2013).

who had been promoted to Resolution Team Leader for the Defendant company and was subject to a strict attendance policy.[71]   As Resolution Team Leader, Green was reprimanded for fourteen late arrivals and nine unscheduled absences before she was issued a warning.  Despite this warning, Green's poor attendance persisted.[72]  Green suffered from idiopathic intracranial hypertension and empty sella syndrome, which required her to attend numerous medical appointments and treatments with various doctors and specialists.[73]  Although the defendant claimed it terminated Green for excessive unexcused absences, Green claimed she was subjected to disability discrimination.[74]

Among other claims, Green argued the defendant failed to reasonably accommodate her disability and failed to engage in the interactive process of determining a reasonable accommodation as required by the ADA.[75]  While Green was suspended from work and awaiting a return-to-work release from her doctor, she made the following accommodation requests: (1) a night shift schedule; (2) a day schedule that would allow her to leave work for appointments and make up work later; and (3) a split-shift schedule to accommodate her appointments.[76]  The defendant argued Green's requests were untimely because she had been effectively terminated prior to the requests, and "because no accommodations could forgive her unexcused absences, which warranted immediate

---

[71] *Id.* at 716-17.

[72] *Id.* at 717.

[73] *Id.*

[74] *Id.*

[75] *Id.* at 726.

[76] *Id.* at 727.

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 16 of 21

termination."[77]

The court held that the fact that defendant did not process Green's termination until after her requested accommodation did not "render it obligated to engage in the interactive process instead of terminating Plaintiff."[78] The court continued:

> In situations where an employee's termination based on a legitimate, nondiscriminatory reason has been made effective but has not yet been processed, courts must not permit the employee to use the ADA as a shield from being fired by suddenly requesting an accommodation before the ink on her valid termination papers is dry. "The ADA does not ... create an impenetrable barrier around the disabled employee, preventing the employer from taking any employment actions vis-a-vis the employee."[79]

The court found in the alternative that the defendant was not required to engage in the interactive process "because Plaintiff's request for accommodations did not and could not include a request to forgive her two months of unexcused absences. Courts have consistently explained that a 'second chance' or forgiveness of prior misconduct otherwise warranting termination is not a 'reasonable accommodation.'"[80] The court also stated: "'Since [a] reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability.'"[81] Further,

---

[77] Id.

[78] Id. at 728-29.

[79] Id. at 729, quoting Kent v. Roman Catholic Church, No. 96-1505, 1997 WL 30201, at * 2 (E.D. La. Jan. 22, 1997).

[80] Id., quoting Brookins v. Indianapolis Power & Light Co., 90 F.Supp.2d 993, 1006–08 (S.D.Ind.2000) (citing Siefken v. Village of Arlington Heights, 65 F.3d 664, 666–67 (7th Cir.1995)).

[81] Id., quoting Brookins, 90 F.Supp.2d at 1007 (citing U.S. Equal Opportunity Employment Commission, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act at 24, question number 35); see Davila v. Qwest Corp., 113 Fed.Appx. 849, 854 (10th Cir.2004) ("[A]s many cases have recognized in various contexts, excusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA.").

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 17 of 21

"[t]he Fifth Circuit has explained in a related context that an employer is obligated to provide reasonable accommodations for a disability but is not required to approve a 'retroactive accommodation' or 'second chance' excusing prior misconduct stemming from the alleged disability."[82] The court ultimately held that, "even if Plaintiff's termination had not been effective until the actual date of termination, ... there was no requirement that Defendant consider Plaintiff's request when her misconduct, *i.e.*, multiple absences definitely determined on December 7 to be unexcused, required her immediate termination."[83]

The Court recognizes that, unlike Green, Plaintiff was not in the process of being terminated at the time of his accommodation request. Plaintiff was, however, on probation for the very conduct which resulted in his termination. Thus, the Court finds the analysis regarding an employer not being required to forgive past misconduct directly applicable and on point under the facts of this case. Plaintiff's work history already contained sufficient grounds for his termination prior to the alleged request for accommodation.

The Court is also guided by the analysis and reasoning in *Earl v. Mervyn's, Inc.*[84] In *Earl*, the plaintiff suffered from Obsessive Compulsive Disorder ("OCD") which she argued caused her excessive tardiness at work. The plaintiff was disciplined for her "punctuality infractions" in accordance with the defendant's company policy.[85] In fact,

---

[82] *Id.*, citing *Burch v. Coca–Cola Co.*, 119 F.3d 305, 320 n. 14 (5th Cir.1997) (evaluating alcoholism under pre–2008 version of the ADA and Rehabilitation Act).

[83] *Id.*

[84] 207 F.3d 1361 (11th Cir. 2000). The Court acknowledges that *Earl* is not binding; however, the Court believes the analysis and reasoning given the factual similarities with the case at bar render the *Earl* decision persuasive.

[85] *Id.* at 1364.

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 18 of 21

despite being placed on the third step of the corrective action policy and given a probationary warning, the plaintiff continued to be late.[86] On one particular late day during this corrective period, the plaintiff requested that she be allowed to clock in whenever she arrived, without reprimand, and be permitted to make up the time at the end of her shift.[87] The defendant rejected this request as unreasonable but offered to schedule the plaintiff on an afternoon or evening shift at her request.[88] Despite this, plaintiff subsequently incurred two additional punctuality infractions, "which would have warranted her dismissal under the terms of Appellee's policy."[89] Although the defendant could have discharged the plaintiff at that time, it provided the plaintiff with a second probationary warning.[90] Twice more following this warning, the plaintiff was late; thus, the plaintiff was suspended pending an evaluation regarding her discharge. The decision was made to terminate the plaintiff.[91] The plaintiff sued the defendant claiming she was terminated in violation of the ADA and FMLA; the district court granted summary judgment in favor of the employer, and the plaintiff appealed.[92]

The Eleventh Circuit upheld the district court's decision, finding that punctuality was an essential function of the plaintiff's job that she could not perform without an

---

[86] *Id.*

[87] *Id.*

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.* at 1365.

[92] *Id.*

19

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 19 of 21

accommodation, which rendered her unqualified for the position.[93] The plaintiff argued that the defendant had failed to begin the required interactive process to determine a reasonable accommodation for her, failed to act in good faith in finding such an accommodation, and failed to show an undue hardship.[94] These arguments were rejected by the district and appellate courts.

The Eleventh Circuit stated that "[t]he burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable."[95] Also, "'where a plaintiff cannot demonstrate "reasonable accommodation," the employer's lack of investigation into reasonable accommodation is unimportant.'"[96] The court held that "[a] request to arrive at work at any time, without reprimand, would in essence require Appellee to change the essential functions of Appellant's job, and thus is not a request for a reasonable accommodation. Appellee was therefore under no duty to engage in an 'interactive process' or to show undue hardship."[97]

Accordingly, the Court finds that based on the Plaintiff's work history of excessive tardiness and absenteeism, which continued even after he was placed on probation, the Defendant was entitled to terminate Plaintiff prior to his alleged accommodation request.

---

[93] *Id.* at 1366.

[94] *Id.* at 1366-67.

[95] *Id.* at 1367, citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997).

[96] *Id.*, quoting *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997).

[97] *Id.*

Case 3:12-cv-00704-SDD-RLB   Document 22   01/15/14   Page 20 of 21

The Defendant was under no obligation, upon receiving Plaintiff's letter, to forgive or excuse the Plaintiff's abundant misconduct. Furthermore, Plaintiff's failure to report for work on the second day following his alleged accommodation request suggests to the Court that Plaintiff may have only requested the accommodation in an effort to "use the ADA as a shield" to circumvent his clearly predictable termination.[98]

## III.    CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's *Motion for New Trial*.[99] The Court has re-evaluated the facts and applicable law and jurisprudence. For those reasons set forth above, the Court grants the Defendant's *Motion for Summary Judgment*.[100] The Court's previous *Ruling*[101] on Plaintiff's retaliation claim remains unchanged. Judgment shall be entered accordingly.

IT IS SO ORDERED.

Baton Rouge, Louisiana, this /4 day of January, 2014.

SHELLY D. DICK, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[98] *See* n. 76, *supra.*

[99] Rec. Doc. No. 19.

[100] Rec. Doc. No. 12.

[101] Rec. Doc. No. 17.

Doc#771